IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CENTURY SURETY COMPANY,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| **v.** § | |
| § | |
| **CARRIAGE PLACE APARTMENTS** § | **CIV. ACTION NO. 4:24-cv-992** |
| **HOUSTON, LLC, TEXAS** § | |
| **COMMERCIAL INSURANCE** § | |
| **SPECIALISTS MGR LLC f/k/a** § | |
| **TEXAS COMMERCIAL INSURANCE** § | |
| **SPECIALISTS, INC., AND DAN** § | |
| **KADERKA III** § | |
| § | |
| *Defendants*. § | |

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Plaintiff, Century Surety Company, and files this Original Complaint for Declaratory Judgment against Defendants Carriage Place Apartments, Houston, LLC, Texas Commercial Specialists MGR LLC f/k/a Commercial Insurance Specialists, Inc., and Dan Kaderka III, and would show the Court the following:

**I.**
**PARTIES**

1.   Plaintiff, Century Surety Company ("Century"), is a corporation domiciled in Ohio, with its principal place of business in Michigan. It is an insurer licensed to transact business in the State of Texas.

2.   Defendant Carriage Place Apartments, Houston, LLC ("Carriage Place") is a Texas Limited Liability Company. For purposes of diversity of citizenship, courts should look to the

citizenship of a limited liability company's individual members. Carriage Place has two member/managers: Fort Grp LLC, and Grow Wealth 2 Retire LLC.

    a.    Fort Grp LLC's Certificate of Formation shows that it is a manager-managed limited liability company. It has two managing members: Sharmishtha Shahi and Nileshwar Shahi. Sharmishtha Shahi is an individual resident of Houston, Texas, and a citizen of the State of Texas. Nileshwar Shahi is an individual resident of Houston, Texas, and a citizen of the State of Texas.

    b.    Grow Wealth 2 Retire, LLC's Certificate of Formation shows that it is manager-managed limited liability company, and has one manager: Sridhar Kumar Sannidhi. Sridhar Kumar Sannidhi is an individual resident of Frisco, Texas, and a citizen of the State of Texas.

3.    Because all of its members are citizens of the State of Texas, Carriage Place is a citizen of the State of Texas for purposes of diversity of citizenship. Carriage Place may be served with process by serving its registered agent for service of process, The Ferebee Group, PLLC, 4335 Parkmead Drive, Seabrook, Texas 77586.

4.    Defendant Texas Commercial Insurance Specialists MGR LLC f/k/a Texas Commercial Specialists, Inc. ("MGR") is a Texas Limited Liability Company. For purposes of diversity of citizenship, courts should look to the citizenship of a limited liability company's individual members. MGR's Certificate of Formation shows that it is a manager-managed limited liability company. It has one manager: Strategy Insurance Group LLC ("Strategy"). Strategy is a Texas limited liability company. Its certificate of formation shows that it is a member-managed limited liability company. Strategy has one member: Daniel Kaderka III. Daniel Kaderka III is an individual resident of Houston, Texas and a citizen of the State of Texas. Because all of its

members are citizens of the state of Texas, MGR is a citizen of the State of Texas for purposes of diversity of citizenship. MGR may be served with process by serving its registered agent for service of process, The Ferebee Group, 2652 Seashore Drive, Seabrook, Texas 77586.

5. Defendant Dan Kaderka III ("Kaderka") is an individual citizen of Houston, Texas. He may be served with process at 1001 S. Dairy Ashford Road Suite 390, Houston, Texas 77077.

## II.
## JURISDICTION AND VENUE

6. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy, exclusive of interests and costs, exceeds $75,000. Plaintiff Century is a citizen of the States of Ohio and Michigan, and Defendants are all citizens of the State of Texas. Therefore, the parties are citizens of different states and complete diversity exists as between the parties.

7. Venue is properly maintained in this Court because it is the judicial district where Defendants are located. 28 U.S.C. § 1391(b)(1). It is the judicial district in which the insured property is located, and the place at which the contract now at issue was issued. 28 U.S.C. § 1391(b)(2). To the extent coverage may be available, which Century disputes, it is also the judicial district in which an Underlying Lawsuit more particularly described below is pending. *See id.*

## III.
## FACTUAL ALLEGATIONS

8. On or about April 26, 2023, Carriage Place executed an application for a commercial general liability policy with Century, to be effective May 6, 2023 – May 6, 2024. Ex. A. In its application for coverage (the "Application"), Carriage Place represented that there had **never** been any assault & battery incidents/claims **on the property**. *Id*. at p. 3. Specifically, the application contains the following representation:

> 5. Have there ever been any assault & battery incidents/claims on this property?   ☐ Yes  ☑ No
> If yes please describe:   N/A

9. The Application contains the following statement: "The Applicant warrants that the above statements and particulars, together with any attached or appended documents or materials (this Application), are true and complete and do not misrepresent, misstate or omit any material facts." Ex. A at p. 4.

10. On September 22, 2023, Ahshanti Carey ("Carey") filed the lawsuit styled *Ahshanti Carey v. Carriage Place Apartments Houston, LLC d/b/a Casa Paz Apartments; Devonshire Real Estate & Asset Management, L.P., Devonshire Real Estate Investments, Inc., Fort Grp LLC; and Grow Wealth 2 Retire LLC*, Cause No. 2023-64947, in the 127th Judicial District Court of Harris County, Texas (the "Underlying Lawsuit"). Ex. B.

11. In the Underlying Lawsuit, Carey claims that on June 20, 2023, an assailant broke into her unit at the Casa Paz apartments while she was sleeping, and sexually assaulted her. *Id*. at p. 3. Among other things, Carey alleges:

> At the time the lease was signed, Defendants were aware of an extensive record of criminal activity and violent crimes occurring in and around the complex but knowingly and intentionally failed to inform Plaintiff. . . . From January 1, 2021 through the date of Plaintiff's sexual assault, there were approximately over 1,000 emergency 9-1-1 calls for service at the Complex alone. In the one year leading up to Plaintiff's break in and sexual assault there were the following reported crimes that occurred on the Complex as follows: 1 sexual assault, 9 aggravated assaults, 12 burglary of habitation, 21 criminal mischiefs, 11 discharge of firearm, 1 home invasion, 21 stolen vehicles.

*Id*. at p. 7.

12. Carey alleges that Carriage Place is liable for premises liability, negligence, gross negligence, joint and several liability, and fraud in the inducement, and claims that Carriage Place had a non-delegable duty to maintain the security of the premises. She seeks in excess of $1,000,000.

13. Century agreed to defend Carriage Place in the Underlying Lawsuit under a reservation of rights and retained counsel on its behalf.

14. Century also agreed to defend Devonshire Real Estate & Asset Management LP, Grow Wealth 2 Retire LLC, Fort GP LLC, and Devonshire Real Estate Investments Inc., under the Policy. Carey sued these four entities along with Carriage Place. They are additional insureds under the Policy.

## IV.
## CENTURY POLICY

15. Following receipt of the Application, and in reliance on Carriage Place's answers therein, Century issued policy number CCP 1121192, effective for the period from May 6, 2023 – May 6, 2024. Ex. C.

16. The Policy contains a general liability coverage part, which provides limits of $1,000,000 per "occurrence" and $2,000,000 general aggregate. A $1000 per-claim deductible applies.

17. The general liability coverage part contains the following insuring agreement:

**SECTION I — COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; . . . .

18. The Policy contains the following pertinent definitions:

**SECTION V – DEFINITIONS**

. . .

   3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

   13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All "bodily injury" or "property damage" arising out of an "occurrence" or series of related "occurrences" is deemed to take place at the time of the first such damage or injury even though the nature and extent of such damage or injury may change; and even though the damage may be continuous, progressive, cumulative, changing or evolving; and even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harmful conditions.[1]

19. The Policy contains the following exclusions, which provides that the Insurance does not apply to:

---

[1] As modified by Form CGL 1701 0917.

    a.    **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

20. The Policy contains a Special Exclusions and Limitations Endorsement, which provides in relevant part that the insurance does not apply to:

    **5.**    **Punitive, Exemplary, Treble Damages, or Multipliers of Attorneys' Fees**

Claims or demands for payment of punitive, exemplary, or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorneys' fees statutorily awarded to the prevailing party.

. . .

## V.
## JUSTICIABLE INTEREST

21. Carriage Place made a demand for a defense and indemnity under the Policy for the Underlying Lawsuit. Century is currently providing a defense to Carriage Place in the Underlying Lawsuit. Century is also defending four other defendants under the Policy.

22. Century seeks a declaration as to its duties and obligations, if any. To the extent this Court determines that Century must pay under the Policy, Century seeks to recover from MGR and Kaderka.

23. An actual controversy therefore exists between the parties hereto pursuant to 28 U.S.C. §2201 et seq., Chapter 37 of the Texas Civil Practice and Remedies Code, and Rule 57 of the Federal Rules of Civil Procedure, and this Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised by this Complaint.

## VI.
## CAUSES OF ACTION

**A.    RESCISSION**

24.    Century alleges and incorporates by reference the allegations found in paragraphs 1 to 23 herein.

25.    On January 5, 2024, in conjunction with Century's investigation of the Underlying Lawsuit, Century discovered that Carriage Place materially misrepresented whether there had been prior assaults and battery incidents at the Property. Carriage Place represented and warranted that there had **never** been any prior assault & battery incidents/claims on the Property. However, in the year prior to the Application alone, there were **more than thirty assaults** at the Property.

26.    The misrepresented condition and breach of warranty by Carriage Place resulted in a Policy that was materially different than the policy Century would have offered had it known the true nature of the risk. The claim now at hand – defense and indemnity in the Underlying Lawsuit – is directly related to the subject of the material misrepresentation.

27.    Carriage Place's incorrect answer to question 5 on the Application was made with actual intent to deceive and increased the risk to Century of issuing the requested insurance.

28.    If Century had known that there were **more than thirty assaults** in the year prior to Carriage Place's execution of the application, it would have issued an assault and battery endorsement to preclude coverage for such incidents. *Even one prior assault would have resulted in the attachment of an assault and battery exclusion*. Century has no appetite for assault and battery coverage at multi-family apartment complexes.

29.    To comply with Texas Insurance Code §§ 705.004 and 705.005, Century provided notice to Carriage Place of its intent to rescind the Policy within 90 days of discovery of the material misrepresentation in the Application. Specifically, by letter dated March 8, 2024 sent by

email and certified United States mail, return receipt requested, to Carriage Place Apartments Houston, LLC Attn: Neil Shahi ("Rescission Letter"), Century communicated its decision to declare the Policy null and void from its inception based on Carriage Place's material misrepresentation about no prior assaults and batteries. A true and accurate copy of the Rescission Letter, as well as proof of mailing, is attached hereto as Exhibit D.

30. Although Century rescinded the Policy, Century will continue to defend Carriage Place and the other four defendants in the Underlying Lawsuit. Century returned Carriage Place's premium payment in accordance with the Texas Insurance Code and Carriage Place's premium finance agreement.

31. All conditions precedent to Century's right to declare the Policy as void from its inception have been performed, or are excused or otherwise have been waived.

32. Century seeks a declaration that the Policy is void *ab initio*, and has no further force and effect, pursuant to Century's valid and timely exercise of its right of rescission under Texas Insurance Code §§ 705.004 and 705.005, the terms of the Policy, and Texas common law, and relieving Century of any obligations thereunder, including but not limited to, the duty to defend and/or indemnify Carriage Place and the other defendants in conjunction with the Underlying Lawsuit.

33. Century further seeks a declaration that it may withdraw from participation in any party's defense in the Underlying Lawsuit.

### B. AGENT/AGENCY NEGLIGENT MISREPRESENTATION

34. Century alleges and incorporates by reference the allegations found in paragraphs 1 to 33 herein.

35. MGR is a retail insurance agency, and Kaderka is a retail insurance agent.

36. MGR and Kaderka are Carriage Place's agents.

37. MGR and Kaderka submitted the Application on behalf of Carriage Place to broker USG, which procured a quote for coverage from Century.

38. The Application contains particular representations. Specifically, it represents that there had **never** been any assault & battery incidents/claims **on the property**. Ex. A at p. 3. Specifically, the application contains the following representation:

> 5. Have there ever been any assault & battery incidents/claims on this property?   ☐ Yes   ☑ No
> If yes please describe:   N/A

39. Kaderka executed the portion of the application that says "APPLICANT'S SIGNATURE." Ex. A at p. 5. Despite signing the Application in the "APPLICANT'S SIGNATURE" block, neither Kaderka nor MGR are the applicant for coverage.

40. The representation by MGR and Kaderka that there had never been any assault & battery incidents/claims at the insured property was false. Specifically, in the year prior to the Application alone, there were more than thirty assaults at the Property. Ex. E.

41. Kaderka and MGR's submission of the application to USG for a quote, with Kaderka's signature as the applicant, evidences their intent that Century rely on the misrepresentation contained therein regarding no prior assaults.

42. Based upon MGR and Kaderka's misrepresentation that there had never been any assault & battery incidents/claims at the insured property, Century issued the Policy without an assault and battery exclusion.

43. Century relied upon MGR and Kaderka's misrepresentation. If Century had known that there were **more than thirty assaults** in the year prior to its receipt of the application, it would not have issued the Policy as it did. Instead, it would have included an assault and battery endorsement to preclude coverage for such incidents. *Even one prior assault would have resulted*

*in the attachment of an assault and battery exclusion*. Century has no appetite for assault and battery coverage at multi-family apartment complexes.

44. As agents, MGR and Kaderka know, or should know, not to submit applications to insurers that contain material misrepresentations.

45. As agents, MGR and Kaderka know, or should know, not to sign applications for insureds when they are not the applicant for coverage.

46. While Century rescinded the Policy upon discovery of the material misrepresentation, it is still shouldering the financial responsibility of funding Carriage Place's defense in the Underlying Lawsuit, as well as shouldering the financial responsibility of defending four other parties. Century would have had no obligation to fund the defense of five parties if Century had known the true nature of the risk, because it would have only issued the Policy with an assault and battery exclusion. Further, Century has been forced to file this suit.

47. In submitting the Application, which contained a material misrepresentation and a signature that was not the insured's, MGR and Kaderka made a negligent misrepresentation to Century. The negligent misrepresentation caused Century damage.

48. If the Court decides that Century is not entitled to rescission of the Policy, Century seeks to recover all amounts it is forced to pay to defend or indemnify Carriage House, Devonshire Real Estate & Asset Management LP, Grow Wealth 2 Retire LLC, Fort GP LLC, and Devonshire Real Estate Investments Inc. from MGR and Kaderka because Century's damages were caused by MGR and Kaderka's negligent fraudulent misrepresentations.

**C.   FRAUDULENT MISREPRESENTATION**

49. Century alleges and incorporates by reference the allegations found in paragraphs 1 to 47 herein.

50. MGR and Kaderka were aware of Century's underwriting guidelines regarding assaults and batteries.

51. MGR and Kaderka represented and signed the Application that there had never been any assault & battery incidents/claims at the Property.

52. MGR and Kaderka knew their representations regarding no prior assaults at the Property was false. Specifically, in the year prior to the Application alone, there were more than thirty assaults at the Property. Ex. E.

53. MGR and Kaderka knew that if they had honestly answered Question 5 on the Application, Century would not have issued the Policy with assault and battery coverage. As a result, MGR and Kaderka intentionally answered the question "no," knowing the answer was "yes."

54. MGR and Kaderka intended that Century rely upon the answer they placed in the Application regarding prior assault & battery incidents/claims, which was false.

55. Century did, in fact, rely upon MGR and Kaderka's fraudulent misrepresentation when it issued the Policy. Based upon MGR and Kaderka's fraudulent representation, Century issued a policy which contained assault and battery coverage that would not have been available to Carriage Place according to Century's underwriting guidelines. That coverage is now the subject of the Underlying Lawsuit.

56. As a result of Century's reliance upon MGR and Kaderka's fraudulent misrepresentation, Century has suffered damages. Century rescinded the Policy upon discovery of the material misrepresentation, but is still shouldering the financial responsibility of funding Carriage Place's defense in the Underlying Lawsuit, as well as shouldering the financial responsibility of defending four other parties. Century has also been forced to file this suit.

57. If the Court decides that Century is not entitled to rescission, Century seeks to recover all amounts it is forced to pay to defend or indemnify Carriage House, Devonshire Real Estate & Asset Management LP, Grow Wealth 2 Retire LLC, Fort GP LLC, and Devonshire Real Estate Investments Inc. from MGR and Kaderka because its damages were caused by MGR and Kaderka's fraudulent misrepresentations.

## VII.
## PRAYER

**WHEREFORE**, Plaintiff Century Surety Company prays for judgment in its favor and against Defendants. Specifically, Century requests that the Court declare:

1) The Policy is void *ab initio*, and has no further force and effect pursuant to Century's valid and timely exercise of its right of rescission under TEXAS INS. CODE §§ 705.004, 704.005, the terms of the Policy, and Texas common law;

2) Century may withdraw from participation in Carriage Place's defense and from the defense of Devonshire Real Estate & Asset Management LP, Grow Wealth 2 Retire LLC, Fort GP LLC, and Devonshire Real Estate Investments Inc.;

3) Century may recover its past defense costs from MGR and Kaderka;

4) To the extent Century must continue to defend Carriage Place, Devonshire Real Estate & Asset Management LP, Grow Wealth 2 Retire LLC, Fort GP LLC, and Devonshire Real Estate Investments Inc., and/or indemnify them against the claims made the basis of the Underlying Lawsuit, Century is entitled to recover all amounts that Century must pay from MGR and Kaderka; and

5) Century is entitled to an award of attorneys' fees and costs of suit, and for all such other and further relief it may show itself justly entitled and for which it shall ever pray.

Respectfully Submitted,

By: */s/ Summer L. Frederick*
**ROBERT J. WITMEYER**
Texas State Bar No. 24091174
Southern District No. 2600115
*rwitmeyer@mayerllp.com*
**SUMMER L. FREDERICK**
State Bar No. 24067764
Southern District No. 1047012
*sfrederick@mayerllp.com*

**MAYER LLP**
750 N. Saint Paul Street, Suite 700
Dallas, Texas 75201
Telephone: (214) 379-6900
Telecopy: (214) 379-6939

**ATTORNEYS FOR PLAINTIFF,
CENTURY SURETY COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September 2024, a true and correct copy of the foregoing document was served on counsel of record using the Court's ECF filing service.

*/s/ Summer L. Frederick*
**SUMMER L. FREDERICK**